**SMITH v. FISHER.** *

No. 14425.

Court of Appeal of Louisiana. Orleans.

Oct. 16, 1933.

---

*Rehearing denied November 13, 1933.

H. W. Robinson, of New Orleans, for appellant.

J. A. Morales, of New Orleans, for appellee.

JANVIER, Judge.

Defendant is a practicing attorney at law in this city. Plaintiff alleges that she employed defendant to negotiate the compromise of a civil claim which was pending against her and that she deposited with him a sum of money to be used by him in effecting the said compromise.

Charging that although the claim was settled for much less than the amount deposited defendant has failed to return to her the balance remaining in his hands, plaintiff seeks judgment against him in the sum of $1,450.

Defendant admits that he was employed to represent plaintiff and that there was deposited with him a total of $3,350 and that there is a balance in his possession, but he contends that he was not employed by plaintiff and that the money was not deposited with him by plaintiff, and he therefore refuses to account to any one except the person who employed him and who made the deposit.

He also contends that the amount remaining in his hands is not $1,450, but is a much smaller sum, to wit, $438.80. The difference between $1,450, the amount claimed by plaintiff, and $438.80, the amount defendant admits some one is entitled to receive from him, is $1,011.20. Of this amount defendant asserts that $1,000 represents his fee and $11.-20 costs expended by him. He contends that he effected a very favorable settlement of the civil matter, and that he averted criminal proceedings which were imminent.

Plaintiff, who is now dead (the administrator of her succession having been substituted as party plaintiff), was a married woman. She desired to sell a certain piece of real estate in New Orleans to a homestead association. It was discovered that there was a cloud upon the title, in that her husband's interest had not been divested. Thereupon she caused her said husband's succession to be opened and, upon the submission of proof to show that he had died and had left no heirs except herself, she obtained a judgment placing her in possession of such interest as the husband may have had in the property. She received for the property $6,500.

Soon afterwards it developed that the husband was not dead and, upon his appearance, the homestead not only made civil claim against plaintiff for the loss with which it was threatened, but also indicated an intention of initiating a criminal prosecution.

In this emergency a Mrs. Elrod, who, though she denies it, seems to be a daughter of plaintiff, called upon defendant and employed him to represent plaintiff. She deposited with defendant $3,350, $3,250 of which, or so much thereof as might be necessary, was to be used in settling the civil claim. The remaining $100 was for a fee for defendant. Defendant says that this $100 was given to him as a retainer, and that the final fee was not discussed or agreed upon at that time. Mrs. Elrod states that the said $100 was to be in full settlement for all services rendered, unless the matter should find its way into court, and that there was a further agreement that, if court proceedings resulted, there was to be an additional fee of $100, and that she was to pay the court costs, which she states defendant estimated at not more than $50.

There were no court proceedings; the husband having been prevailed upon to execute, for the sum of $1,800, a deed divesting himself of all interest in, or claim to, the property.

In addition to the $1,800 paid by defendant to plaintiff's husband there was expended $11.20 in connection with the deed, so that of the $3,250 placed with defendant there remained in his hands $1,438.80.

There are, then, two contentions before us for consideration. The first is whether plaintiff is entitled to make claim for the return of such balance as may be due, and the second is whether or not, conceding plaintiff's right to make the claim, defendant is entitled to retain any part of that sum as a fee in addition to the original $100 paid to him.

It is true that the money was produced by Mrs. Elrod and not by plaintiff, and, if there were any controversy between plaintiff and Mrs. Elrod over the ownership of the fund, defendant would be justified in taking every precaution to make certain that he did not return the fund to the wrong person. But the record shows that when Mrs. Elrod delivered the money to him she instructed him to issue a receipt stating that it had been received from plaintiff, and the record further shows that Mrs. Elrod appeared in the court below and gave testimony in support of plaintiff's claim for the return of the balance. It is true that she seems to have studiously avoided a direct, unequivocal statement to the effect that the money belongs to the plaintiff, but the purpose of her testimony was to secure a judgment ordering the return to plaintiff of the balance remaining in defendant's hands, and in such case it is impossible to conceive that a court would later permit her to assert any claim of her own.

The money is due either to plaintiff or to Mrs. Elrod, and since Mrs. Elrod, in an effort to secure it for plaintiff, testified in plaintiff's favor, she certainly cannot later contend that defendant should have paid it only to her.

In Corpus Juris, vol. 21, page 1236, it is stated that: " * * * The testimony of the witness in the former suit may work an estoppel if to permit him to change it in a subsequent suit to which he is a party would operate to the prejudice of the party claiming the estoppel who has acted in reliance thereon."

In 35 La. Ann. page 743, is found the case of Folger v. Palmer, in which a plea of estoppel was sustained. A person who had been a witness in a previous case had testified with reference to the note sued on: "I have a note now of Mr. Folger's, or rather the Bank has." The Supreme Court held that the witness who so testified could not later, in another suit, claim to be the owner of the same note. See, also, Wilkin Hale State Bank v. Tucker et al., No. 7872 of this court, decided November 20, 1920. [See Louisiana and Southern Digest.]

Since Mrs. Elrod cannot later be heard to make claim against defendant, and therefore, so far as she is concerned, defendant, if he makes payment to plaintiff, need have no apprehension of any future claim, defendant cannot now be heard to say that the fund belongs to Mrs. Elrod and not to plaintiff.

The contention of defendant that plaintiff, a married woman, is not authorized to stand in judgment in this matter, is without merit.

The husband has been made a party defendant and has attempted to defeat the claim of his wife, not because of any pretended claim of his own, but solely, so far as we can discover, because of ill feeling toward her.

Of course, if plaintiff had made the deposit and had used community funds in doing so, then the claim for the return of any portion of those funds would have been the property of the community and suit therefor could have been brought only by the husband. But he makes no such claim. So far as he is concerned he cannot later be heard to assert any such right against defendant.

When we consider the amount which plaintiff should be ordered to return, we find ourselves in agreement with the conclusion reached by the district judge, that there was no understanding fixing in advance the fee of defendant. While the evidence on this matter is in conflict, that in favor of defendant preponderates. Certainly it cannot be said that the finding below was patently incorrect.

There remains, then, only the question of the amount to which defendant became entitled as a result of the services rendered.

The district court, in addition to the retainer fee of $100, which is in no way involved here, allowed a fee of $800, and also court costs of $11.20, and rendered judgment for $638.80, the amount remaining from the original deposit of $3,250, after the payment of $1,800 to plaintiff's husband and $811.20 to defendant for his fee and for costs.

There was involved what would unquestionably have been a very serious criminal charge, and there was also a grave possibility that all of the amount deposited would be required to settle the civil claim. The negotiations extended over a period of several weeks and required some ten or more lengthy conferences. The attorneys who testified as to the nature and value of defendant's services were of the opinion that a fee of even $1,000 would not have been excessive. We see no reason to disturb the judgment rendered below.

The judgment appealed from is affirmed; defendant to pay all costs.

Affirmed.